NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250585-U

NO. 4-25-0585

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 24, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|     Petitioner-Appellee, | ) | No. 24JA73 |
|     v. | ) | |
| Isaac S., | ) | Honorable |
|     Respondent-Appellant). | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, finding no arguable issue could be raised on appeal.

¶ 2   Respondent, Isaac S., appeals the trial court's dispositional order finding him unable to care for, protect, train, educate, supervise, or discipline his daughter, L.H. (born in April 2024). Counsel was appointed to represent respondent on appeal. Counsel has filed a motion to withdraw pursuant to *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000), alleging that there is no arguably meritorious issue to be raised on appeal. We grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 3          I. BACKGROUND

¶ 4   On August 26, 2024, the State filed a petition for adjudication of wardship pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS

405/2-3(1)(b) (West 2024)) concerning L.H. The petition alleged that respondent and L.H.'s mother, who is not a party to this appeal, previously had three children removed from their care due to concerns about domestic violence and their mental health and their parental rights to these children were subsequently terminated due to their failure to remedy the issues that brought the minors into care. The petition stated that on November 23, 2022, respondent pleaded guilty to aggravated domestic battery of one of these minors, was sentenced to 48 months' probation, and was required to register as a violent offender against youth. The petition also alleged that the living conditions in the residence respondent shared with L.H.'s mother were unsafe for an infant, as it was "cluttered with clothing strewn about the floor," cat feces were observed on the floor, and there was an odor of cat urine throughout the home.

¶ 5        A shelter care hearing was held on August 27, 2024. An investigator from the Illinois Department of Children and Family Services (DCFS) testified that, prior to L.H.'s birth, respondent had inflicted a spiral fracture on his four-month-old child, which resulted in respondent's three children coming into care. Respondent's parental rights to these three children were subsequently terminated. The investigator testified that a different investigator viewed the residence of respondent and L.H.'s mother and reported that the home was "very disheveled," with a smell of cat urine and feces. The investigator then took protective custody of L.H. The trial court ordered that L.H. be placed in the temporary custody of DCFS.

¶ 6        On April 16, 2025, an adjudicatory hearing was held. Respondent admitted the allegations in the petition for adjudication of wardship. The trial court accepted respondent's admission, finding the evidence presented at the shelter care hearing provided a factual basis for the allegations. The court entered an order finding the allegations in the petition had been proven by a preponderance of the evidence pursuant to respondent's admission and that L.H. was

neglected in that she was in an environment injurious to her welfare ( see *id.*).

¶ 7          On May 16, 2025, a dispositional report was filed. The report stated that respondent left the minor's mother in March 2025 following a domestic violence incident for which the minor's mother was arrested. Respondent obtained his own apartment, which a caseworker observed to be appropriate. Respondent reported working at several fast food restaurants, though he had to take several weeks off due to medical issues. Most recently, he reported being employed as an assistant manager at Taco Bell. He also worked at a church. Respondent was serving a sentence of probation related to his conviction for aggravated domestic battery. The report stated respondent had been compliant with the terms of his probation and his probation officer reported seeing a positive change in him. The report stated that, pursuant to a service plan that was in place, respondent had been recommended to complete domestic violence services. He had been unable to find an organization willing to provide these services, despite several attempts.

¶ 8          The dispositional report stated that respondent reported having several mental health diagnoses during the integrated assessment, and it was recommended that he participate in a mental health evaluation, follow any recommendations, and participate in intensive psychotherapy. The report stated respondent had been engaged in therapy since November 2024.

¶ 9          The report stated that respondent had been diagnosed with epilepsy. In January 2025, his doctor advised him not to work "due to fluid in his lungs and heart." He was hospitalized in February 2025, after having surgery to drain fluid from his brain. In March 2025, respondent stated that his doctor wanted him to get a home nurse due to concerns about him living alone and continuing to have seizures. However, approximately two months later, respondent stated his doctor was no longer recommending a home nurse. Respondent reported

having a seizure at work in early May and having to go to the emergency room. The report stated the caseworker had requested respondent's medical records in May 2025, but it did not indicate that she had received them.

¶ 10    The dispositional report stated that the integrated assessment recommended that respondent complete parenting classes, which he had done. Respondent had supervised visitation with L.H. for two hours each week. Respondent attended all visits except one, where he failed to inform the visitation worker of a court hearing. A visitation specialist reported that respondent was attentive to L.H. during visits and brought food, toys, and books for her. Respondent had "worked hard on being nurturing," encouraged L.H. to work on skills, and read to L.H.

¶ 11    The report indicated that respondent had been cooperative with DCFS since the case was opened. He had also been engaged in services with Bella Ease for approximately two years, including workshops and a parenting support group, and he was cooperative with his advocate there. At the conclusion of the dispositional report, the caseworker recommended that DCFS retain guardianship of L.H., with the right to place her, that the permanency goal be set as return home within 12 months, and that respondent be ordered to cooperate in services.

¶ 12    On June 4, 2025, an addendum to the dispositional report was filed, which stated that DCFS had received a hotline report indicating that respondent had been left to care for his paramour's children by himself and the conditions of his probation prohibited him from being unsupervised around children. A caseworker visited respondent's home on May 28, 2025, and observed a bunk bed, crib, and children's toys in the home. Respondent stated that his paramour and her children did not live with him, but they spent the night there twice a week. Respondent told the caseworker that he was not allowed to be alone with children under 18 years old due to his probation and he had not been alone with the children. On June 2, 2025, respondent told the

caseworker that his relationship with his paramour had ended. The next day, the caseworker obtained a copy of respondent's sentencing order, which stated he was to have no unsupervised contact with persons under the age of 18. Respondent's probation officer advised the caseworker that the order could be amended if he was found fit to have custody of L.H.

¶ 13    On June 9, 2025, a dispositional hearing was held. The trial court noted that it had received the dispositional reports prepared in advance of the hearing, and the parties indicated they had reviewed the reports. The State indicated it would not be presenting evidence at the hearing, and the guardian *ad litem* (GAL) stated he would be relying on the dispositional reports. Respondent called several witnesses.

¶ 14    Eric Kaminsky testified that he worked at Bella Ease, which was a family advocacy center. He had been working with respondent for approximately two years, both one-on-one and in groups. He stated respondent had been "working towards doing regular counseling" and had been involved in support groups at Bella Ease. Respondent had tried to enroll in domestic violence services but had difficulty finding a provider. According to Kaminsky, respondent had "shown dramatic improvement" in attending appointments and support groups, keeping a job, and keeping a residence. On occasions where respondent had not been able to pay his rent, he proactively sought out resources to assist him. Kaminsky stated he had visited respondent's home, and it had been clean and orderly at each visit. Kaminsky had spoken with respondent about his romantic relationships, and they discussed boundaries and healthy relationships. Respondent told him that his most recent romantic relationship had ended.

¶ 15    Respondent's probation officer testified that respondent had made efforts to address domestic violence issues in his life. She stated he had been compliant with the requirements of probation, reporting to probation as directed and following through with her

recommendations.

¶ 16		The rector of respondent's church testified that he had known respondent for approximately one year. He stated that respondent was one of the most active members of the church and often attended two services on Sundays. Respondent also attended a young adults' group and a men's group at the church. Respondent often told the rector that he wanted to "step back into" a parenting role and be a father. Another employee of the church testified that he had been to respondent's apartment and it was clean and safe when he last visited it.

¶ 17		Respondent testified that he would love to have L.H. back in his care. He stated he had been working at Taco Bell for about two years, attending church regularly, and focusing on his mental health issues to "be the best fit parent" for L.H. He lived alone in a two-bedroom apartment. He believed, based on the parenting classes and support groups he had attended, that he was ready to care for L.H. in his home. He stated he would have a "great baby-sitter" for L.H., had the means to provide L.H. with the things she needed, and would have the support of his church if he needed it. He stated he was currently receiving supervised visitation with L.H. but had not received overnight or unsupervised visits.

¶ 18		The State argued that respondent was making strides toward fitness but was still unable to care for L.H. at that time. The State asserted that respondent needed further mental health treatment and had not yet progressed beyond supervised visits. The State argued that L.H. should be made a ward of the court, with guardianship and custody remaining with DCFS.

¶ 19		The GAL argued that respondent was making efforts to improve himself and showing progress in many areas. The GAL asserted that although respondent was approaching fitness, he was not yet fit. The GAL acknowledged respondent had been evaluated for domestic violence services many times but argued that he had issues with domestic violence as both a

victim and perpetrator that needed to be addressed.

¶ 20 Respondent's counsel argued that the evidence showed respondent was a fit, ready, and able parent, citing his contributions to the community through participation in his church and his efforts to comply with probation and become a rehabilitated person.

¶ 21 The trial court found that the evidence presented at the hearing and the reports that had previously been filed showed that L.H. was currently in a placement that was meeting her needs. The court observed that respondent was involved in some services under the service plan and had been cooperating with the caseworkers. However, the court found that respondent was still in need of case management services in the areas of domestic violence and mental health and he was unable to have L.H. placed in his custody at that time.

¶ 22 The trial court entered a written order finding respondent was unable to care for, protect, train, educate, supervise, or discipline L.H. and placement with him would be contrary to L.H.'s health, safety, and best interests because his older children had been removed from his care and his parental rights to them were terminated. The court also noted there had been domestic violence in the home and respondent had a history of mental health issues. The court set the permanency goal as return home within 12 months. The court ordered that L.H. be made a ward of the court and that custody and guardianship of the minor remain d with DCFS.

¶ 23 This appeal followed.

¶ 24 II. ANALYSIS

¶ 25 On appeal, appointed counsel has moved to withdraw, stating that he has reviewed the record and concluded that no nonfrivolous grounds for appeal exist. Counsel has filed a certificate of service indicating he mailed a copy of his motion to withdraw and supporting brief to respondent. Respondent has not filed a response.

¶ 26　　　　　The procedure for appellate counsel to withdraw set forth in *Anders v. California*, 386 U.S. 738 (1967), applies to proceedings under the Juvenile Court Act. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8; *In re La. P.*, 2024 IL App (4th) 230938-U, ¶ 39. Under this procedure, appellate counsel's motion to withdraw must be accompanied by a brief addressing anything in the record that might arguably support the appeal. *S.M.*, 314 Ill. App. 3d at 685. Counsel must then sketch the argument in support of any issues that could conceivably be raised on appeal, explain why such arguments are frivolous, and conclude the case presents no viable grounds for appeal. *Id.*

¶ 27　　　　　Pursuant to the Juvenile Court Act, in a proceeding for adjudication of wardship, the trial court must employ a two-step process to determine whether a minor should become a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18. First, an adjudicatory hearing is held, where the court is to consider only the question of whether the allegations that the minor is abused or neglected are supported by the preponderance of the evidence. *Id.* ¶ 19; see 705 ILCS 405/2-18(1) (West 2024). Second, if the court determines the minor is abused or neglected at the adjudicatory hearing, the court holds a dispositional hearing to determine "whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court." *In re Z.L.*, 2021 IL 126931, ¶ 60; see 705 ILCS 405/2-21(2) (West 2024).

¶ 28　　　　　　　　　　　　A. Adjudicatory Order

¶ 29　　　　　Initially, appointed counsel has failed to address the adjudicatory order in his brief, simply noting that respondent stipulated to the adjudicatory order and asserting that the finding that the minor was neglected was not challenged on appeal. It is true that the notice of appeal in this case stated that only the dispositional order was being appealed. However, the

appellate court has jurisdiction to review an adjudicatory order when the notice of appeal specifies only the dispositional order as the judgment being appealed because an adjudicatory order is a step in the procedural progression leading to a dispositional order. See *In re D.R.*, 354 Ill. App. 3d 468, 473 (2004); *In re A.C.*, 2021 IL App (4th) 210329-U, ¶ 78. Accordingly, we disagree with counsel's determination that it was unnecessary to address the adjudicatory order in his brief.

¶ 30 Nevertheless, because the issue is straightforward, we elect to review the record ourselves. See *In re Austin C.*, 353 Ill. App. 3d 942, 948 (2004) (holding that when appellate counsel files an inadequate motion to withdraw, the appellate court may review the record itself and determine whether the trial court's decision should be affirmed). As counsel noted in his brief, the record shows that respondent admitted to the allegations in the petition for adjudication of wardship at the adjudicatory hearing. Moreover, the record indicates that there was a factual basis supporting his admission (namely, the evidence presented at the shelter care hearing). Accordingly, we find there is no arguably meritorious issue to be raised on appeal that the trial court erred by adjudicating L.H. neglected.

¶ 31 B. Dispositional Order

¶ 32 Appointed counsel asserts that he considered arguing that the evidence at the dispositional hearing "showed [respondent] to be a fit parent and that the trial court should not have found him to be unfit" based on evidence of his progress in services and compliance with probation. However, counsel has concluded that such an argument would be meritless.

¶ 33 "At the dispositional hearing, the [trial] court shall determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court, and, if the minor is to be made a ward of the court, the court shall determine the proper disposition best

serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2024). "[T]he court may rely on all evidence that is helpful in determining these questions, including oral and written reports, even though not competent for the purposes for the adjudicatory hearing." (Internal quotation marks omitted.) *In re M.D.*, 2022 IL App (4th) 210288, ¶ 63.

¶ 34　　　　　On review, the trial court's decision at the dispositional hearing "will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008). "A court's factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where its finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41.

¶ 35　　　　　Initially, we note that, contrary to counsel's framing of the issue in his brief, the trial court found respondent unable, not unfit, to care for, protect, train, educate, and discipline L.H. However, we find counsel's arguments concerning unfitness apply with equal force to the court's finding that respondent was unable to care for L.H., and we agree with counsel that there is no meritorious argument that can be made that the trial court's findings at the dispositional hearing were against the manifest weight of the evidence.

¶ 36　　　　　The evidence at the dispositional hearing showed that respondent had been cooperative with DCFS, had engaged in services, and was making progress. However, he had been unable to complete domestic violence services, and the evidence at the dispositional hearing did not show that his issues with domestic violence had yet been adequately addressed. Domestic violence has been a significant issue in this case, as respondent was found guilty of aggravated domestic battery for fracturing the arm of one of L.H.'s siblings, and there were also domestic

violence issues in his relationship with L.H.'s mother. Also, although respondent's supervised visits with L.H. had gone well, he had not yet progressed to unsupervised or overnight visits. In fact, the addendum to the dispositional report stated that the terms of respondent's probation prohibited him from being unsupervised around minors. While the addendum to the report indicated that the probation order could be amended, there was no evidence that it had been amended at the time of the dispositional hearing.

¶ 37　　　　Although respondent had been regularly attending counseling for several months, the dispositional report recommended that he continue to participate in counseling, and there was no evidence that his mental health issues had been addressed to the extent he was ready to have L.H. in his custody. Additionally, the dispositional report indicated that respondent had a seizure disorder that had, at times, prevented him from working, required surgery, and led his doctor to recommend that he have a home nurse. The report stated the caseworker had requested his medical records relating to this disorder, but there is no indication that the caseworker ever received the records.

¶ 38　　　　Under these circumstances, we agree with counsel that the trial court's determinations that it was in L.H.'s best interests to be made a ward of the court, respondent was unable to care for L.H., and DCFS be granted custody and guardianship were not against the manifest weight of the evidence, and the court's choice of disposition was not an abuse of discretion.

¶ 39　　　　　　　　　　　　III. CONCLUSION

¶ 40　　　　For the reasons stated, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 41　　　　Affirmed.